## J. M. H. COCHRAN *v.* RICHARDSON & WHIPPLE.

### *Principal and Agent.*

The defendants carried on a country store which was managed by R., as their general agent. He had no authority from them to buy butter for cash, but was authorized to receive it in payment of debts or in exchange for goods, and this course was in conformity with the practice of country stores gen-

Cochran *v.* Richardson & Whipple.

erally. He was, however, at the same time acting as the agent of another person for the purchase of butter for cash. He purchased of the plaintiff eight tubs of butter to be delivered at the defendants' store, and agreed to pay cash therefor, but in so doing he did not profess to act as the defendants' agent, though the plaintiff supposed he was buying for them, but they were not aware that he so supposed. The defendants received no benefit from the butter delivered upon this contract by the plaintiff to R. *Held*, that the defendants were not liable therefor.

BOOK ACCOUNT. The auditor reported that the account presented by the plaintiff was for eight tubs of butter claimed by him to have been sold to the defendants, in quantities of two tubs at a time, at different periods during the spring and summer of 1858, and in regard to such claim the auditor found the following facts :

From 1856 to 1859 the defendants, who resided in Washington county, had a store at Craftsbury, which was carried on by one Don C. Richardson, a son of the defendant Richardson, as their agent. This agent was authorized to buy and sell for the defendants such goods and produce as are ordinarily dealt in at country stores, but not to buy butter and other produce in large quantities for foreign market. The agent was instructed by the defendants not to pay cash for butter to send off, but was authorized by them to take in so much butter on debts and in exchange for goods, as might be necessary to supply the wants of their customers, and he accordingly did at different times purchase butter in that way. This agent kept a post office in the defendants' store and was on his private account agent for the sale of certain patent medicines. He also was in the habit of buying butter in considerable quantities for other parties, who furnished him money for that purpose, and allowed him a commission on his purchases. In the spring of 1858 he was employed to purchase butter for one Simpson, and while so employed, he contracted with the plaintiff to buy all the butter he should make until the June following, to be delivered at the defendants' store as often as the plaintiff should have two tubs ready for delivery, and in pursuance of this contract the plaintiff delivered the butter charged in his account. Don C. Richardson usually kept his butter accounts on other books than those relating to the defendants' business, but four of the tubs of butter delivered him by

Cochran v. Richardson & Whipple.

the plaintiff were by him in the plaintiff's presence credited to the latter upon the defendant's books, but these items of credit were subsequently erased as an error

The plaintiff supposed when he made the contract and delivered the butter, that it was for the defendants, and he had no notice from any source that Don C. Richardson had instructions from the defendants not to buy butter for cash, or that he was not buying this butter as the defendants' agent. It was a general practice among country merchants in the vicinity to take butter in large or small quantities in payment of debts and in exchange for goods, and more or less to pay cash for butter, and in one instance one of the defendants took a tub of butter in payment of an account, and paid a small balance in cash to the debtor. The plaintiff had been, previous to the contract in question, credited three dollars upon the defendants' books for ball butter delivered by him at the store before that time, and this credit was acquiesced in by the defendants.

It did not appear that the defendants were general dealers or speculators in butter, or other produce, except as above stated, or that they ever bought large quantities of butter, or ever paid cash for it, except as above explained, or that Don C. Richardson was ever employed to buy butter for the defendants on commission.

At the time the contract in question was made with the plaintiff Don C. Richardson was buying on commission for Simpson, and he had previously bought extensively for two other parties, who furnished cash to him for that purpose. His contract with the plaintiff was to pay cash for the butter when it was all delivered. It did not appear that the defendants knew the plaintiff supposed he was selling the butter to them, or that they were either of them present when any of it was delivered, or that they had any personal supervision of the affairs of the store, except on a very few occasions when one or the other of them happened to be there, and inspected the books.

Upon these facts the county court, at the December Term, 1859, — POLAND, J., presiding, — rendered judgment for the defendants, to which the plaintiff excepted.

*J. H. Prentiss*, for the plaintiff.

*Benj. H. Steele*, for the defendants.

KELLOGG, J.  The right of the plaintiff to recover of the defendants for the eight tubs of butter charged in his account rests upon the authority of Don C. Richardson, a son of one of the defendants, and the managing agent in the care of their store at Craftsbury, to bind them, as their agent, on his contract with the plaintiff, on the facts reported by the auditor.

It is well settled that the authority of a general agent to per-form all things usual in the line of business in which he is employed cannot be limited by any private order or direction not known to the party dealing with him, and such an agent may have power to bind his principal by contracts unauthorized by, and even in defiance of, his instructions.  A general agent is a person whom the principal puts in his place to transact all his business of a particular kind ; and the agent's authority may be expressly given, or may be inferred from the acts or conduct of his supposed principal.  Where the authority is to be inferred from the acts or conduct of the principal, the general rule is that the extent of the agent's authority is, as between the principal and third parties, to be measured by the character and extent of his usual employment.  In these cases, the apparent authority is considered as the real authority.  It cannot be questioned that Don C. Richardson was the general agent of the defendants in carrying on the business of their store in Craftsbury, and that, within the regular course of his business employment, he could make contracts binding on the defendants.  But to make his contract thus binding on the defendants it is necessary that it should have been made by him in their behalf or for their benefit. Will the facts reported by the auditor justify the conclusion that the contract made by the plaintiff with Don C. Richardson was within the regular course of the business of the defendants' store ? It appears that the authority of Don C. Richardson in respect to the purchase of butter was limited by instructions from his principals, directing him not to pay cash for butter, but to take

Cochran *v.* Richardson & Whipple.

so much butter in, on debts and in exchange for goods, as might
be necessary to supply the wants of customers ; and that the
defendants were not general dealers or speculators in butter ; and
that the general practice among country merchants in the vicinity
was to take butter, in large or small quantities, in payment of
debts and in exchange for goods, and to pay cash, more or less,
towards the same.    The contract on which the butter charged in
the plaintiff's account was delivered was for all the butter which
the plaintiff might thereafter make within a certain period, and
payment for the same was to be made in cash.    There is no
finding in the case that the defendants received the butter, or any
benefit from the contract, or that they ever assented to or recog-
nized the contract, or that Don C. Richardson, in making the
contract, professed to act as the agent of the defendants or on
their behalf.    On the contrary, it is found that when he made
the contract he was also the agent of one Simpson, a third party,
as well as of the defendants, and that he was authorized by
Simpson to make contracts for the purchase of butter for him ;
and the facts reported by the auditor would seem to tend more
conclusively to establish the liability of Simpson than of the
defendants for the butter delivered to Don C. Richardson by the
plaintiff.    It may be conceded that Don C. Richardson was the
general agent of the defendants in the management of their store;
but it is to be noted that he was at the same time acting as the
agent of Simpson, with unquestionable authority as such agent
to contract with the plaintiff for his butter.    The fact that the
plaintiff supposed that he was dealing with the defendants,
through their agent, in making this contract, although it may
show his own good faith in the transaction, is not to be regarded
as proof of the defendants' liability upon the contract, especially
when coupled with the fact that it did not appear that the defend-
ants knew that the plaintiff supposed that he was selling the
butter to them.

If the auditor's report showed that the defendants received any
benefit from the contract made by the plaintiff with Don C.
Richardson, or from the property delivered by the plaintiff under
that contract, the questions made in this case might be entitled
to a different consideration ; but, on the facts reported, we are

not satisfied that the contract was within any express authority from the defendants,· or within the usual course of business at their store, or that it was made by Don C. Richardson in the name or for the benefit of the defendants or as their agent, or that the defendants ever received any benefit from it, or ever in any manner recognized or assented to it.  These essential elements of the liability of the defendants on the contract do not appear to exist in the case.  The judgment of the county court in favor of the defendants is affirmed.